Good morning, Your Honors. Thomas Reckin of McCarter & English, LLP, out of Hartford, Connecticut, for Jarrow Formulas, Inc., the appellant. I would like to reserve three minutes of time for rebuttal. May it please the Court. Biominerals underlying complaint asserted causes of action for statutory and common law trade dress infringement, unfair competition, including passing off and palming off claims. And there's no question about that and that those claims in and of themselves did not trigger a duty to defend under the steadfast policy. But this Court, the Ninth Circuit, in its affirmance of Michael Taylor Designs, has resolved that the same facts can also support claims for implied product disparagement. In fact, in the Northern District of California decision, Michael Taylor Designs affirmed by the Ninth Circuit, it held that the mere fact that the claims were labeled as trade dress infringement does not preclude the possibility of disparagement claims. The question before the District Court, and now before this Court, was whether the facts alleged, those reasonably inferred, or that could be inferred from the facts alleged, and those known from the extrinsic evidence had the potential to support claims of implied disparagement. If so, if so, then steadfast broad duty to defend was triggered. The District Court got the answer to that question wrong and it did so for at least three reasons. First, it held that the allegations did not satisfy the specific reference element for a disparagement claim. This was wrong because the reference to the CAF study in the biominerals complaint referenced in Jaro Formula's advertisement was, in fact, a reference to the product that was disparaged, allegedly, BioSil, the product of biominerals. Stop on that one for a second. Yes. You're contending that the reference to the study was a reference to the product? The reference to the study was an implied reference to the product, BioSil, and to biominerals. How did the reference to the study, even assuming it was an implied reference, disparage the BioSil product? Well, here is the... Since the study touted the BioSil product. Well, what the study said and what was quoted in Jaro Formula's advertisement was this. Bioavailable silicon was shown to increase the collagen concentration up to 12.5 percent in the dermis of the skin of calves. That came out of the CAF study. Right. That was the study that the only product that was tested, according to the allegations in the complaint and in the arbitration counterclaim and in the memorandum of law submitted in connection with the ex parte application for a temporary injunction, the only product tested was BioSil. I understand that. The question I asked, let me try it differently, is what, assuming that was a reference directly to BioSil, how did it disparage BioSil? Well, it disparaged BioSil according to the implications, inferences to be drawn from the allegations in the complaint because BioSil said Jaro Formula's product, JaroSil, had not been established as providing the benefits of the CAF study. And therefore, the inference to be drawn from that was that the JaroSil product was inferior because Jaro Formula's could not show, according to the argument that was made by BioSil, because Jaro Formula's could not show that its product could reproduce the benefits that were proven by the CAF study. JaroSil was therefore an inferior product. There was nothing in the complaint, though, that made any allegations of inferiority that I saw. The only thing that I saw that suggested that Jaro was inferior to BioSil was the ad that was attached to the letter that was sent to the insurance company by Jaro, the BioSil ad, and that had a comparison of certain factors. So there was that piece of extrinsic evidence, if you will, that was presented to the insurance company. And the question is, from that piece of extrinsic evidence, should the insurance company infer that there was a potential disparagement claim that was lurking somewhere? Is that enough under our case law? I believe that is enough under our case law, Your Honor. But just to be clear here, the allegation in BioSil's complaint, one of the allegations, and there were many that related to this issue, JFI's representation to the public that the silicon in its product has been scientifically shown to do so is a false statement. Right, but is it disparaging to BioSil? Is that what it has to be? Our claim is that on these pleadings, keeping in mind that pleadings are plastic, they are amendable, malleable, changeable, these pleadings had enough in them in order to establish the potential for an implied disparagement claim. Why? Because the allegation was that Jaro's attempt to elevate its product to the status of BioSil by referencing the CAF study, the CAF study being attached to the complaint and to the other documents filed by Biominerals and referred to specifically in the allegations, by attempting to elevate its product to the level of BioSil, it had committed a false statement, it had made a false statement, and by associating with BioSil, BioSil's product is now associated with an inferior product. But the complaint never says inferior. I mean, that's the problem. You're absolutely right. There's no suggestion of inferiority. It's like in the Microtech case. Obviously, they could have made that claim, but there's not even a suggestion of inferiority. So how is it that we could say that was disparaging based on the complaint or that falls within the coverage based on the allegations in the complaint? Your Honor, it is the case that there was no specific allegation of inferiority that was in the complaint. Well, I hear you. Your lips keep moving and you keep saying all these things, and it's very complicated, but it just seems like at a bottom line what you have is JARO in a way, I guess, having the chutzpah to say, you know, ride on BioSil's, you know, coattails, and then they want to say that it's disparagement. Well, I mean, we don't – I mean, I hear the words that you're saying, but I think what Judge Coote is saying, there's no inferiority, there's no superiority, there aren't any of those things, so there are – it seems like you're trying to conceive of something that just isn't here. Well, Your Honor, I mean, I would disagree to this extent. While the words inferior or that the product was somehow inferior are not expressed in the complaint, the claim that JARO attempted to claim that its product was equivalent and that was a false statement, that that – by making that comparison, they have dragged down BioMinerals, which is why there were allegations in the complaint about damage to reputation and damage to goodwill. I'm having – I'm still having trouble with this basic point. Let me give you a terrible hypothetical, and I know it's a hypothetical. If I said I was as smart as Judge Acuda and everybody knew that wasn't true, would that be disparaging to Judge Acuda? Well – Or would it be – would I be making a claim that people thought less of me about? That's really what you're saying. What you're saying is you're selling a product and you're implying it's as good as BioSil and you're saying that's got to be disparaging to BioSil because our product is no good. Well, I'm not saying – But that's not what they say in their complaint. All they say in their complaint is, you know, you're trading on our reputation. They don't – They clearly say that. They clearly say that we're trading on their reputation. But the facts that are alleged in connection with that trading on reputation claim are sufficient, we say, in order to support an implied disparagement claim. No different than Michael – I understand that's your position. Like Judge Callahan, I'm trying to find out why it is you think that you were – that this complaint alleges that you were disparaging BioSil. I would suggest, Your Honor, it's no different from Michael Taylor Designs. There's a photograph of furniture that – Well, there it was alleged it was a cheap knockoff. But let's look at Microtech because there the court speculates that the reason the complaint didn't allege that Microtech was falsely saying their code or their compiler was faster is because if they went to trial, it might turn out that the compiler was faster. And so why wouldn't we have the same implication here that BioSil carefully avoided saying that Jera was inferior and we could speculate, as they did in Microtech, that the reason they avoided it is because it wasn't or because it was better. I mean, certainly you could read the complaint that way. It's equally susceptible to that reading. Except in Microtech, the court made a specific finding, Your Honor, that really the case was not about implied disparagement for the reason that the underlying plaintiff took pains to avoid making allegations about – that would have the effect of disparaging the competing product. Isn't that true in this case as well? This seems pretty much close on point. I would suggest no, Your Honor, for this reason. In Microtech, the speed of the compiler code that was at issue, they stayed completely away of, and that was the connection. That was the important connection that would have established, I believe, implied disparagement had those allegations appeared in the complaint. This is different, however. And the reason it's different is because biominerals did not steer clear of the CAF study. The biominerals specifically focused in on the CAF study, said, You, Jara Formulas, cite to the CAF study. You claim the benefits of the CAF study. That's a false statement, and you've caused damage to our reputation as a result, and that the statement that you make about your product while referencing our CAF study, because your product is – and, again, I understand these words are not in the complaint, but I think that that's the natural conclusion to be drawn – because your product is inferior. Why didn't they say that? Why don't they say in the complaint, Your ingredients are different, Your ingredients are inferior, You're not as good as our product, and you're falsely claiming to be as good. I mean, all they say is that the CAF study was done about us and not about you. The – I don't know, obviously, why they chose not to include those allegations, but the implication of the statement that your reference to the CAF study is false and inappropriate is – could not provide the benefits of BioSil, and in that regard, therefore, was an inferior product. Go ahead. No, did the – I want to go back to the complaint. I was trying to find it as I looked at it. Did the complaint say that your product doesn't have the benefits referenced in the CAF study, or did it simply say you shouldn't have referred to the CAF study because it's a study of our product, not yours? It said that our attempt to claim the benefits of the CAF study was false. Right, but it did – it said that because the CAF study was done on their product, not on yours. Isn't that correct? That's correct. It didn't say your product – your product doesn't have these benefits, as I understand it. The complaint didn't – it didn't make an allegation about your product's quality or lack of quality. I don't believe it made an – I'd have to go back and look at the complaint again, Your Honor, to address that question with absolute confidence, but I don't believe there is an express statement, which is why we're in the world here of implied disparagement. I see my time is up. Well, you still – you want to say for rebuttal? Yes. Yes, for rebuttal. Yeah. Thank you, Your Honors. Thank you. Good morning. Good morning, Your Honors. Mika Moore on behalf of the Apelli Steadfast Insurance Company. I will try to be brief, Your Honors. The district court did correctly rule that Steadfast had no duty to defend JARO and the underlying biominerals matter. The district court made that finding on several bases, one of which included that there was no specific reference to biocell or to biominerals in the underlying complaint. The district court also found that the statement that was made not only did not refer to them, but was not disparaging. It seems to me that JARO is relying perhaps most heavily on Michael Taylor Designs as supporting the claim of implied disparagement. Can you explain from your perspective why you think Michael Taylor supports Steadfast's decision to decline representation? Absolutely, Your Honor. Michael Taylor Designs, frankly, does not have the same facts. I believe that the appellant just asserted that based on the same facts as here, Michael Taylor Designs found that there was disparagement implied. We don't have the same facts in Michael Taylor Designs. In that case, there was a bait-and-switch. There was an advertisement of the authentic furniture that was advertised in order to bring consumers and customers into the storefront where the salespeople would then steer, allegedly, steer the consumers to the furniture that was not authentic. And so what the court in Michael Taylor Designs found was that the advertisement itself was not a disparaging statement. What was actually potentially a disparaging statement is what was said in the stores by the salespeople. So let's focus on that for a second. So in Michael Taylor, coverage was mandated because of the steering. Because the steering. In effect, somebody said, buy this, it's as good as that. Right. And in the affirmation of the Michael Taylor Design case, which came out around the same time as the Swift decision, which is also a. . . Let's just focus on that steering for a second. Sure. Before you move on. Just let me finish here. I'm sorry. Why isn't this a form of steering? Why isn't this. . . Why isn't what Jarrow did a form of saying, I know there's this really good biocell stuff out there, but where every bit is good, buy us where the knockoff. Why isn't that close to Michael Taylor? Because there were no statements like that. Were they implied? We know there were no express statements. Was it implied? No, they weren't implied. And there's nothing like that in the complaint that BioMinerals filed. BioMinerals specifically used the words, passing off for a reason. What BioMinerals was saying was that the tray dress that Jarrow used was similar to that that BioCell used. And then they were saying that there was one statement that was made, and it was only one statement at issue, and that was about the bioavailable silicon. There is no allegation that the salespeople, for example, by BioCell or Jarrow directed people that would normally buy BioCell to themselves. What they were referring to was an ad that was inside of the product that simply referred to what we've been calling the CAF study results. But that is not a reference at all to BioCell. It's a reference to bioavailable silicon, but it's not a reference to BioCell or to BioMinerals. And that's what the district court correctly found. Well, the California insurance law, at least some decisions, are very, very broad. And they do say that any extrinsic evidence, I'm looking at this, I think it's Hudson Insurance, whether the facts alleged or otherwise known by the insurer suggest potential liability, and that's the key. And so we do have this advertisement by BioCell saying Jarrow is an inferior, Jarrow Cell is an inferior product to BioCell. And so there's at least floating out there some implication that if someone buys Jarrow Cell thinking it's as good as BioCell, that might disparage BioCell's reputation, much like in Michael Taylor. How do we reconcile this very broad principle in Hudson with the facts here, even if the complaint is silent? Well, Your Honor, in this case, it's an interesting, I think, argument where the complainant is claiming that it's superior and is claiming that the other product is inferior. That cannot be disparagement. It is not Jarrow saying that BioCell is inferior. It's not Jarrow that is saying that biominerals somehow does not have services that are up to par. I think that the example in the hypothetical that was presented earlier about whether if one of us were to say that we were as smart as the other, we are emulating. And emulation in and of itself cannot be disparagement. It is something that you want to be. It is not something that you are saying is inferior to you. But isn't Michael Taylor about by selling cheap knockoffs, you're saying the premium product is the same as these cheap knockoffs, and that reduces the value of the premium product? Well, it's not quite that, Your Honor, because in Michael Taylor's designs, the court made the extra effort to say that the steering and during the steering, that that is when the false statements had to have occurred. In other words, you are actually saying that you are the authentic product when you are not. And so you are actually making a statement about that product because you are saying you are the rose-quiz furniture. When, in fact, you are not, that is not what we have here. In fact, if you look at the more recent decision of Swift. Well, isn't Jarosel by using the trade dress, similar trade dress, and is saying we're the same as by a sale, just like the salespeople of Michael Taylor were supposedly saying about the knockoff. This knockoff is the same as premium product. Well, Your Honor, actually, no. Saying that you're the same is not the same as saying that you're superior. Saying that you're the same is not an insult. But if you say you're the same and you're actually an inferior product, then that casts doubt, I guess. That casts doubt on the value of the premium product. I think that was the theory in Michael Taylor. Yes, so if I change my hypothetical, if I said Judge Akut is as dumb as I am, that would be disparaging, wouldn't it? That probably would be disparaging. I'm happy with that. Thank you for leaving me out of this. I don't know what it means. You're presiding. I want to be clear. I wouldn't say that, Your Honor. But I'm interested in your answer to that question. In Michael Taylor, if what gave rise to coverage was, in effect, the salesman saying impliedly this stuff is as good as the good stuff, isn't that close to what Jarosel was saying here? And if, in fact, its stuff was inferior, it's a strange, we're all in strange situations in coverage cases because Jarosel's attorneys are busy arguing that the people should have known that our stuff was inferior and you're arguing the opposite. But isn't that really what the allegation in the complaint is? Well, there are several responses as to why that would not give rise to the potential for coverage under our policy, Your Honor. In Michael Taylor Designs, I think it's important to remember that in the affirmation of that decision, as well as in the Swift case, which is we had to supplement the materials to provide Hartford versus Swift, which was the October 2012 decision that discusses Michael Taylor Designs. There was a special point made of why that particular case might have given rise to the potential for coverage, and that is because they were saying that the products, the fake products were actually the real product. It's not the same as if you put the two products side by side and they're clearly marked different products. It was that there were statements that were made by the salespeople that disparaged the Rosequist furniture while the consumers were in the store. So it wasn't the advertisement at all. In fact, the court said the advertisement itself could not give rise to a disparagement claim. Now, in cases such as Microtech, Aetna Casualty, as well as in Hartford and the case of Nichols versus Great American, all of these cases are cited in the briefs and in the supplemental briefs. Passing off claims is where one competitor is holding his product out to be the same or similar to a product that precedes it. That's the purpose of passing off. You want to trade on the goodwill of what has already been established. That's exactly why biominerals use that phrase in their complaint. So when the question was posed earlier, why wouldn't, why didn't they make those allegations in their complaint? We can't speculate. Let me ask you this. Let's just assume hypothetically at this point that in some way, Jarrow, it could be converted into, their complaint could be converted into an applied disparagement by biominerals. What do you lose, or do you then move to the nonconformity exclusion? I think you would then move to the nonconformity exclusion in this case because in this case the only statement that is made is about Jarrow's own product. Jarrow made the statement that bioavailable silicon increased the collagen in the dermis of calves by 12.5%. Then biominerals says by making that statement, you are holding your product out to have an, to actually be the product that was tested in this study, when in fact it was not. In other words, you're holding your product out to have the same results. So if you focus in on that statement, the only statement that Jarrow made, which doesn't refer to biominerals or biocell, it's a statement about its own product. And in total call, the court found that under very similar circumstances, that is when there is a nonconformity exclusion that applies to that set of facts. It's when you are promoting your own product to have attributes that it might not, and that is what formulates the false advertisement. What does the nonconformity exclusion cover that is already not excluded by the coverage language of the contract? In other words, your first argument here is that this is not a disparagement claim. Correct. And therefore doesn't fall within, falls within, doesn't fall within the coverage. Correct. Tell me, give me an example of something that might be covered by the insurance, but nonetheless, covered by the basic coverage, but nonetheless excluded by the nonconformity exclusion. I'm having trouble matching the two of those up in my mind. Your problem, well, I'm thinking you're having trouble matching them up is because. . . In other words, what you're saying in this case is this isn't covered in the first place. This is not covered in the first place. But if it is covered in the first place, it's excluded. Well, actually. . . And one of my questions, I guess, is why have an exclusion for something that wouldn't be covered in the first place? Well, that's actually a good question. You have an exclusion in order to make it clear to the reader and to the policyholder that you're not going to cover statements that they make about their own product. In other words, you're not going to guarantee that product on the marketplace. If you're holding yourself out to have attributes that you don't have, and consumers sue you or competitors sue you because of false advertising, you won't get coverage for that. Right. And so my question goes back. . . Let's assume that's the case. You hold yourself to have attributes that you don't have. Is it covered by the basic coverage of the contract? The way I read the insurance contract, under your view, it would not be. It would not be. And now we have an exclusion that excludes nothing because it wouldn't be covered in the first place. Well, I think, as is the case, as the Court did in Total Call, I mean, I think what some of the exclusions do here is they just go to make it a little bit clearer about what's not covered by the policy so that when you read it all in juxtaposition, if you are defaming or disparaging someone else's product, then you're not necessarily making a statement about your own product. When you're making a statement about your own product and the way that your product will perform, which is essentially what Biominerals was, the conclusion that Biominerals was drawing from the use of or the reference to the CAF study results, then that is not covered. And so in Total Call, that is the decision that was brought down by that Court, where in that case, if you had to, where Total Call, the insured in that case, was referring to how their phone cards, for example, would, should be promoted and how their phone cards would be utilized in terms of minutes versus pricing, the competitor said your phone cards really don't work that way and therefore you are damaging my reputation because you're selling your phone cards at a certain price and people are going to think your phone cards are better than mine, but they're not. And so even against those allegations in Total Call, the Court said, well, there was no reference to the competitor. So here the nonconformity exclusion really, in your view, works to clarify on these specific facts. It's not. But there could be, but I think what we're saying is there could be things that could be covered and then the nonconformity would exclude. I mean, that's usually. Yeah, I mean, if they say, I think, I don't know if this was Total Call or another case, we're the only product that has this feature that is talking about your own features but it's also disparaging every other item. So it's not clear whether that would fall under the exclusion or not. I think in Total Call that statement wasn't made, just like it wasn't made here, so the Court did discuss that as saying we don't have those same allegations here that were present in Epiphany. And so there is no disparagement because there is no superiority being asserted and you're not saying that you're the only producer of this particular result. And so in that case, there wasn't a disparagement. And instead, the Court said this is more like a false advertisement of your own product where you're holding your product out to be something that your competitor is saying that it isn't. And so in this case, just as the district court found, there was no. It seems like your split in the hair is pretty fine there. And then if you go back to that insurance policies are supposed to be read quite broadly, that cuts against you. I don't think so, Your Honor, because it didn't fall within a disparagement in the first place for the reasons that we've stated. There's no specific reference to the product. There was also no derogatory reference to the product, and it was specifically described as a passing-off claim, which Microtech and Aetna and Nichols all say cannot be disparagement. Well, if it had said what Judge Acuda said, we're the only product that does such and such, would that be a disparagement? I believe that in Epiphany. Is that closer? I believe it is closer because the Epiphany case says so, but we didn't do that. In other words, the insurer did not do that in this instance. They never said that they were the only ones that had the bioavailable silicon. They never said that they were the only product that could produce that result. They also never said that they produced that result. They actually just said bioavailable silicon has been shown to increase the collagen in calves by 12.5%. That is not a disparagement as a matter of law, Your Honor. All right. I think your time has expired unless any of the panel has additional questions. Thank you for your argument. Thank you, Your Honors. If I may, I'll start with the nonconformity exclusion. If this Court finds that the underlying pleadings stated a claim or had the potential to state a claim for implied product disparagement, the nonconformity exclusion would not apply to that claim. If the underlying complaint, Judge Okuda, could be read to have the claim that you suggested and an implied disparagement claim, the nonconformity exclusion would bar one but not the other. And I think that that's the teaching of safety dynamics as well as total call. And the reason the result was reached in total call that was reached is because there the Court found there was no implied product disparagement that was either stated or could be inferred from the allegations of the complaint. And so that being the case, with respect to any other inferences or causes of action that might be drawn from the allegations of the complaint, they would be barred by the nonconformity exclusion. Take, for example, a breach of warranty claim. I say my card offers you 90 minutes, but I only give you 45 minutes of calling time, and one of my customers sues me. I tender that claim to my insurer, and my insurer relies understandably on the nonconformity exclusion, and that's one example. But the only claim that you're saying is covered in this case is an implied disparagement claim. We say that we're... That's your sole claim for coverage. Exactly. Exactly right, Judge Hurwitz. Let me turn next to the question of steering, which came up. Indeed, there were no allegations of steering here, express allegations of steering, as in Michael Taylor designs. But, Judge Hurwitz, as you point out, or suggested, at least in your questioning, that really is what we're talking about here. Jaro Formulas was not selling BioSil. It was only selling JaroSil. So, as alleged in BioMinerals' complaint, Jaro Formulas was no longer a distributor of BioSil. Anyone that saw the reference to the CAF study, and we're not just talking about end customers here,  Anyone who saw that and made the connection to BioSil, and then went to JaroSil to buy the product, well, they were necessarily steered. It wasn't as the result of an affirmative statement, but they were nonetheless steered. I think I'm 30 seconds over, and I appreciate very much the Court's attention. Thank you very much. Let me make sure that the panel doesn't have any additional questions. All right, thank you. Thank you. This matter will stand submitted.
judges: Callahan, Ikuta, Hurwitz